UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ALL TECH REPAIRS, INC., MOBILE SOLUTIONS, INC., and MOBILE SOLUTIONS ONE, INC., | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | NO. 3:19-CV-1051-K |
| MMI-CPR, LLC, | § § § | |
| Defendant. | § § § § | |

# MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiffs' Application for Temporary Restraining Order and Preliminary Injunction and Brief in Support (the "Application") (Doc. No. 8). After carefully considering the Application, the response, the reply, Plaintiffs' Original Petition (Doc. No. 1), and the law, the Court **DENIES** the Application as to Plaintiffs' request for a temporary restraining order because Plaintiffs have failed to clearly carry their burden to establish that the substantial threat of injury is both immediate and irreparable in this case.

I.   **Factual and Procedural Background**

The dispute in this case involves a contract between Plaintiff All Tech Repairs, Inc. ("All Tech") and Defendant MMI-CPR, LLC ("CPR") that is an Area Representative Agreement ("ARA") between the two parties. CPR is the franchisor for

1

cell phone and electronic device retail stores in Dallas, Texas and other areas. All Tech is an "Area Developer" for CPR. All Tech's primary responsibilities are to open, and recruit other interested parties to open, retail stores as franchisees of CPR. Plaintiff Mobile Solutions, Inc. ("MSI") is a franchisee of CPR with several stores. Plaintiff Mobile Solutions One, Inc. ("MSO") serves as the operating company for MSI's stores. All Plaintiffs have common ownership.

All Tech and CPR are parties to the ARA, which details the responsibilities related to All Tech's position as an Area Developer. Under the ARA, All Tech receives certain payments for newly opened stores in its assigned geographic territory, as well as 50% of "continuing monthly [r]oyalty fees" collected from franchisee stores in the territory.

In January 2019, CPR sent All Tech a Notice of Termination of the ARA based on alleged failures by All Tech to (1) develop the required number of stores under the ARA and (2) conduct surveys and provide support to the franchisees in its territory. All Tech alleges that after this Notice of Termination, CPR has failed to pay the royalty fees due to All Tech under the ARA. All Tech alleges that because CPR refuses to pay these fees to All Tech, All Tech is funding some of MSI's stores from its reserves.

Plaintiffs initiated the instant case in state court alleging two claims. Plaintiffs first seek a declaration from the Court that the Notice of Termination is invalid and that the ARA is still in effect because CPR issued it without complying with a provision of the ARA that requires CPR provide notice of default and an opportunity to cure.

Plaintiffs also allege that CPR breached the ARA on three different grounds, including a failure to pay royalty fees to All Tech. CPR timely removed the case to this Court on May 1, 2019. Plaintiffs filed the Application with this Court on May 17, 2019, and the Application is now fully briefed.

## II. Applicable Law

A temporary restraining order is "simply a highly accelerated and temporary form of preliminary injunctive relief," meaning a movant seeking such relief must establish the same four elements for obtaining a preliminary injunction. *Lee v. Verizon Commc'ns Inc.*, Civ. Action No. 3:12–CV–4834–D, 2012 WL 6089041, at *1 n.2 (N.D. Tex. Dec. 7, 2012) (Fitzwater, C.J.) (quoting *Hassani v. Napolitano*, Civ. Action No. 3:09–CV–1201–D, 2009 WL 2044596, at *1 (N.D. Tex. July 15, 2009) (Fitzwater, C.J.)) To be entitled to a temporary restraining order, a movant must demonstrate that it meets a four-prong test: (1) a substantial likelihood of success on the merits; (2) a substantial threat of immediate and irreparable harm for which the movant has no adequate remedy at law; (3) that greater injury will result from denying the temporary restraining order than if it is granted; and (4) that a temporary restraining order will not disserve the public interest. *Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C.*, 710 F.3d 579, 582 (5th Cir. 2013). "The decision to grant or deny a preliminary injunction is discretionary with the district court." *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985). Because a temporary restraining order, like a preliminary injunction, is an extraordinary remedy, it should not be

3

granted unless the movant has "'clearly carried the burden of persuasion' on all four requirements." *Bluefield Water Ass'n v. City of Starkville*, 577 F.3d 250, 253 (5th Cir. 2009) (quoting *Lake Charles Diesel, Inc. v. Gen. Motors Corp.*, 328 F.3d 192, 195–96 (5th Cir. 2003)). Failure to sufficiently establish any one of the four elements requires this Court to deny the movant's request for a temporary restraining order. *See Enter. Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 472 (5th Cir. 1985).

### III. Analysis

The Court turns first to the second requirement that Plaintiffs must establish: a substantial threat of immediate and irreparable harm for which they have no adequate remedy at law.

"A [movant] seeking to show irreparable harm must show that: (a) harm to the [movant] is imminent; (b) the injury would be irreparable; and (c) the [movant] has no other adequate legal remedy." *Mannatech, Inc. v. Wellness Quest, LLC*, Civ. Action No. 3:14-CV-2497-K, 2014 WL 11515729, at *1 (N.D. Tex. Nov. 4, 2014) (Kinkeade, J.) (citing *Conlay v. Baylor Coll. of Med.*, Civ. Action No. H–08–1038, 2010 WL 774162, at *5 (S.D. Tex. Mar. 3, 2010)). "For purposes of injunctive relief, an adequate remedy at law exists when the situation sought to be enjoined is capable of being remedied by legally measurable damages." *Dresser-Rand Co. v. Virtual Automation Inc.*, 361 F.3d 831, 848 (5th Cir. 2004). "Loss of income, compensable after trial on the merits, or financial distress, does not constitute irreparable injury." *Dig. Generation, Inc. v. Boring*, 869 F. Supp. 2d 761, 781 (N.D. Tex. 2012) (Lindsay, J.) (citing *Sampson v. Murray*, 415 U.S.

61, 90 (1974)). The "exception to [this] general rule that damages cannot be compensable in monetary relief . . . applies only in cases 'where the potential economic loss is so great as to threaten the existence of the movant's business' or where a business 'would suffer a substantial loss of business and perhaps even bankruptcy' absent injunctive relief." *Id.* (quoting *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 932 (1975)). "[L]oss of customers or goodwill" is only an irreparable harm when the movant "show[s] that the loss cannot be measured in money damages." *Id.* at 778 (citing *Millennium Rests. Grp., Inc. v. City of Dallas*, 181 F. Supp. 2d 659, 666 (N.D. Tex. 2001) (Fish, J.)).

In discussing their potential irreparable harm, Plaintiffs describe much of the potential harm in terms of lost income, lost customers, and financial distress. The Court only considers these potential aspects of Plaintiffs' harm "irreparable" to the extent they either (1) are immeasurable in money damages or (2) demonstrate a substantial threat to Plaintiffs' existence. *See Dig. Generation, Inc.*, 869 F. Supp. 2d at 778, 781. Outside of a few conclusory statements, Plaintiffs fail to demonstrate why these potential losses would be immeasurable in money damages, so the Court focuses its analysis on Plaintiffs' argument concerning the potential threat to their existence.

For two interrelated reasons, the Court finds that Plaintiffs do not clearly carry their burden to establish a substantial threat of immediate and irreparable harm in arguing that Plaintiffs face a substantial threat of having to close or file bankruptcy. The Court first turns to the issue of Plaintiffs' delay in seeking injunctive relief, an issue

CPR raises in its response. The dispute concerning the ARA originated in January 2019, Plaintiffs filed for a temporary injunction in state court on April 17, 2019, and, after removal to this Court on May 1, 2019, Plaintiffs only formally moved this Court for a temporary restraining order and preliminary injunction on May 17, 2019. In their reply brief, Plaintiffs explain that the delay in seeking injunctive relief stems from good-faith negotiations with opposing counsel in an effort to avoid litigation. Plaintiffs support this contention with the declaration of Amin Lakhani and certain letters from their counsel to CPR's general counsel spanning from January 2019 to early April 2019. The Court recognizes that unlike other cases in which movants failed to sufficiently justify their delay in seeking injunctive relief, Plaintiffs here do provide some explanation for the delay. *See Wireless Agents, L.L.C. v. T-Mobile, USA, Inc.*, Civil Action No. 3:05–CV–0094–D, 2006 WL 1540587, at *5 (N.D. Tex. June 6, 2006) (Fitzwater, J.) ("Beyond these statements in its brief, however, [the movant] does not direct the court to evidence that defendants are responsible for the delay, nor does it seek leave to file with its reply brief a supplemental appendix containing such evidence.") The Court credits Plaintiffs' attempt to negotiate a solution between the parties and recognizes that such attempt is justification for some delay in pursuing injunctive relief; however, the Court notes that this requested injunctive relief is only an "emergency" because Plaintiffs claim they will deplete their reserves by the end of May. In other words, while the Court has no issue with Plaintiffs attempting to negotiate a resolution without litigation, Plaintiffs were aware of the harm posed by withheld royalties no later than

February 2019, the first time CPR withheld a regular royalty payment, and Plaintiffs still chose to continue negotiations rather than take measures to protect themselves from the potential of lost future royalties. Furthermore, Plaintiffs took over two weeks to formally move this Court for injunctive relief after CPR removed this case from state court. Although the Court does not find that this delay strongly "militates against the issuance of a preliminary injunction," the Court finds that the delay in initiating this case and seeking injunctive relief, taken as a whole, suggests that the "urgency" for the requested injunctive relief was not as serious as Plaintiffs would suggest. *See id.* at *4 (quoting *Polymer Techs., Inc. v. Bridwell*, 103 F.3d 970, 973 (Fed. Cir. 1996)).

The Court turns next to an issue of *who* is at risk of suffering an irreparable harm without injunctive relief. CPR references this issue by arguing that only All Tech, not MSI or MSO, has standing to sue for a breach of the ARA. In their reply, Plaintiffs explain in a footnote that all Plaintiffs have standing under the Declaratory Judgment Act, and, even if the Court determined that MSI and MSO do not have standing, such a finding would not bar the Court from granting the requested injunctive relief. Plaintiffs, in other words, focus on a traditional understanding of the concept of "standing." The Court instead interprets CPR's reference to "standing" in the larger context of its argument concerning irreparable harm. CPR is arguing that All Tech's alleged irreparable harm is that by it not receiving the royalty payments, All Tech cannot in turn finance *other* entities, including the stores owned by MSI and operated by MSO. Plaintiffs appear to suggest that because MSI and MSO are affiliates of All

7

Tech, and because they all have common ownership, that all entities experience the same irreparable harm. (Plaintiffs tellingly refer to themselves collectively when making their arguments about irreparable harm in their brief.)

Without addressing whether the harm alleged by Plaintiffs is "irreparable" for purposes of injunctive relief, the Court finds that the harm felt by Plaintiffs is due, at least in part, to the operating structure between All Tech, MSI, and MSO. According to Plaintiffs, because of their affiliation and common ownership, all three Plaintiffs feel the harm created by CPR's alleged refusal to pay royalties. MSI and MSO apparently rely upon All Tech's financial support. This arrangement, and Plaintiffs' description of their alleged harm, suggest that the harm would not be "irreparable" solely as to All Tech if not for the fact that All Tech is funding MSI and MSO. All Tech's decision to fund MSI and MSO does not relate to the rights and obligations under the ARA, to which only All Tech and CPR are parties. In other words, CPR's alleged breach of the contract does not, in itself, create an irreparable harm to any of the Plaintiffs. If the harm is irreparable at all, it appears to be irreparable, based on the record before the Court, because three separate entities rely upon the royalty fees due to All Tech under the ARA.

This Court has previously rejected an analogous argument made by a non-movant that argued that a movant's injury was not irreparable because it was a subsidiary entity that could rely upon the financial support of its related entities. *See Family Rehab., Inc. v. Azar*, Civil Action No. 3:17-CV-3008-K, 2018 WL 3155911, at

8

*6 (N.D. Tex. June 28, 2018) (Kinkeade, J.) (discussing how the non-movant did not argue that the Court should pierce the corporate veil before considering the assets of related entities in determining how "irreparable" the harm would be to the movant). The Court therefore declines to find that the alleged potential harm to Plaintiffs is irreparable when the impact of the potential harm is so severe at least partially because of the Plaintiffs' business operating structure.

Plaintiffs have the burden to clearly carry their burden on all four requirements for injunctive relief. *Bluefield Water Ass'n*, 577 F.3d at 253. Plaintiffs' delay in pursuing injunctive relief and their own role in contributing to any arguable irreparability of their alleged harm may not, taken separately, weigh against a finding that Plaintiffs face a substantial threat of immediate and irreparable harm for which they have no adequate remedy at law; however, these deficiencies in Plaintiffs' argument for injunctive relief, taken together, support the Court's finding that Plaintiffs have not clearly carried their burden of proving an irreparable and imminent harm. *See Wireless Agents, L.L.C.*, 2006 WL 1540587, at *5 (discussing how certain "circumstances . . . viewed together" sufficiently rebutted the presumption of irreparable harm in a patent infringement case). Plaintiffs' remaining arguments concerning the alleged irreparability of their harm do not persuade the Court that the Plaintiffs have no adequate remedy at law.

IV.     **Conclusion**

Because the Court finds that Plaintiffs do not clearly establish a substantial threat of immediate and irreparable harm, and Plaintiffs must "'clearly carr[y] the burden of persuasion' on all four requirements," the Court does not address any other requirement other than the second requirement. *See Bluefield Water Ass'n*, 577 F.3d at 253. The Court therefore **DENIES** the Application as to Plaintiffs' request for a temporary restraining order. The Court refrains from ruling on Plaintiffs' request for a preliminary injunction at this time.

**SO ORDERED.**

Signed May 29th, 2019.

_____
ED KINKEADE
UNITED STATES DISTRICT JUDGE